IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


WILI ENRIQUE GOMEZ,                                      No. 2:18-cv-01607-HZ

                         Plaintiff,                      OPINION & ORDER

        v.

COLLETTE PETERS, BRIDGET
AMSBERRY, PEDRO, J. DUCHEK,
BROWN, FRAZIER,

                         Defendants.


Juan C. Chavez
Alex Meggitt
PO Box 5248
Portland, OR 97208

        Attorneys for Plaintiff

Michael R. Washington
OREGON DEPARTMENT OF JUSTICE
Trial Division
1162 Court Street NE
Salem, OR 97301

  Attorney for Defendants

HERNÁNDEZ, District Judge:

  Plaintiff Wili Enrique Gomez brings this § 1983 suit against Defendants Collette Peters, Bridget Amsberry, Pedro, J. Duchek, Brown, and Frazier. Defendants move for summary judgment arguing: (1) Plaintiff has not exhausted his administrative remedies and (2) Defendants are entitled to qualified immunity. For the reasons that follow, the Court denies Defendants' Motion for Summary Judgment and grants Defendants' Supplemental Motion for Summary Judgment. Because Defendants are entitled to qualified immunity, this case is dismissed.

## BACKGROUND

  At the time of the events underlying this case, Plaintiff was an inmate at Eastern Oregon Correctional Institution. Miles Decl. ¶ 3, ECF 31. On April 8, 2018, Plaintiff was involved in a physical altercation with other inmates, resulting in the use of oleoresin capsicum ("OC") spray by prison officials. Second Chavez Decl. ("Gomez Dep.") 11:20–12:2, ECF 62. After Plaintiff was sprayed with OC spray, he was taken to the Disciplinary Segregation Unit ("DSU"). *Id.* at 15:15–17. When Plaintiff arrived in the DSU, he was observed by a correctional officer every ten minutes for the first thirty minutes, examined by a nurse, allowed wet and dry towels, and placed in an open-air area. Duchek Decl. ¶ 5, Att. 1 at 1, ECF 55. He was also afforded clean clothes. *Id.* About forty-five minutes after he arrived in the DSU, he was offered a shower. *Id.*; Gomez Dep. 15:18–20. At the time of this incident, the showers in the DSU were set at a temperature no greater than 120° F. Duchek Decl. ¶ 6.

Plaintiff testified that the hot water made his face feel like it was melting, and he screamed in pain. Gomez Dep. 16:5–10. He continued to feel the effects of the OC spray throughout the night and into the next two days. *Id.* at 16:12–18. He also felt the effects of the spray the next time he took a shower, and he told staff that he felt like he was burning. *Id.*

On August 2, 2018—four months after the April incident—Plaintiff filed a grievance stating that EOCI supervisors were training staff to decontaminate inmates with hot showers and therefore using chemical agents against the manufacturer's instructions and in violation of OAR 291-013-0104(5)(a):[1]

> This grievance is based on the chemical agent manufacturer's instructions I received in the mail today. OAR 291-013-0104(5)(a) states in short that chemical agents must be used in accordance with manufacturer's instructions. The instructions state to decontaminate in cool water. This grievance is on EOCI Supervisor for training their staff to decontaminate inmates in hot water as a form of punishment to inflict worse pain. Supervisors are in a joint conspiracy to decontaminate the opposite of how the instructions say to decontaminate and I've been a victim. The pain the hot water causes is horrible. Again so there is no confusion this grievance is based on manufacturer's instructions I received in the mail today. . . . and these instructions cannot be found in the institutional resources available for inmates.

Miles Decl. ¶ 11, Att. 5 at 2–3 (with spelling corrections).

The next day, the grievance was returned to Plaintiff because it did not comply with OAR 291-109-140(2). Specifically, officials wrote that the grievance:

> [H]as not demonstrated how it qualifies under OAR 291-109-0140(2). You have not demonstrated a misapplication or lack of a specific rule. Your grievance does not demonstrate unprofessional conduct or an oversight or error that has affected you. The grievance does not relate to a program failure or loss of property that is not in accordance with rule and policy.

---

[1] A version of the Oregon Administrative Rules (OAR) applicable to Plaintiff's grievance can be found as Attachment 2 to the Declaration of Ronald Miles. Miles Decl. Att. 2, ECF 31.

> If you have any questions regarding grievances, please refer to the Department of
> Corrections Administrative Rule "Inmate Communication and Grievance Review
> System" tab #109 located in the Legal Library.

*Id.* at ¶ 12, Att. 5 at 1. Nina Sobotta—the grievance coordinator—testified at her deposition that there were several deficiencies with the grievance, including the failure to provide a date of the alleged incident or injury or any information about the alleged incident when Plaintiff was not properly decontaminated. First Chavez Decl. ("Sobotta Dep.") 28:13–30:21, ECF 44. However, the official's response to Plaintiff's grievance did not identify these issues. *Id.* Plaintiff did not resubmit his grievance to address its deficiencies. Miles Decl. ¶ 13.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Defendants move for summary judgment on Plaintiff's Eighth Amendment claims, arguing (1) Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA) and (2) Defendants are entitled to qualified immunity. The Court addresses each argument in turn.

## I.    Exhaustion of Administrative Remedies

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action

shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, however, only as long as "administrative remedies . . . are available." *Ross v. Blake,* 136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca,* 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

"[A]side from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Ross,* 136 S.Ct. at 1855–56 (rejecting the Fourth Circuit's "freewheeling" special circumstances exception to the PLRA's exhaustion requirement). The Supreme Court has expressly rejected judge-made exhaustion doctrines for claims subject to the PLRA. *Id.* at 1856–57; *see also Woodford v. Ngo,* 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court[.]").

Because exhaustion is an affirmative defense, it "must be pled and proved by a defendant." *Albino,* 747 F.3d at 1168. The defendant has the burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the inmate shows a failure to exhaust. *Id.* at 1166, 1174.

Plaintiff makes four arguments in opposition to Defendants' motion. First, Plaintiff argues that the PLRA's exhaustion defense is a "legally impermissible defense." Pl. Resp. 4, ECF 43. Second, Plaintiff argues that Defendants improperly denied Plaintiff's grievance, thereby denying him an "available" remedy. *Id.* at 6. Third, Plaintiff argues that Defendants "made the grievance system futile regarding claims of improper decontamination." *Id.* Finally, Plaintiff asserts that Defendants waived any other claims regarding deficiencies in Plaintiff's grievance, including timeliness or lack-of-specificity of harm, except for the deficiencies identified in Defendants' response. *Id.* Because Defendants' improper processing of Plaintiff's grievance prevented Plaintiff from pursuing his grievance through the necessary sequence of appeals, the Court finds that administrative remedies were effectively unavailable to Plaintiff.

"[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859. For example, the Supreme Court has indicated that no remedy is "available" under the statute when an office tasked with considering grievances in the prison handbook "disclaims the capacity to consider those petitions" or administrative officials decline to ever exercise their apparent authority to resolve grievances. *Id.* In the Ninth Circuit, an inmate can also show that an administrative process was effectively unavailable by demonstrating that they took "reasonable and appropriate steps to exhaust" but were prevented from doing so because of the actions of prison officials. *Benson v. Peters*, No. 2:14-CV-00132-CL, 2016 WL 259701, at *4 (D. Or. Jan. 20, 2016) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010)). A mistake by prison officials can render such remedies unavailable if said mistake "prevents the inmate from 'pursuing the necessary sequence of appeals.'" *Id.* (quoting *Sapp*, 623 F.3d at 823) (brackets omitted). In

*Andres v. Marshall*, for example, the Ninth Circuit held that the administrative remedies for the plaintiff's excessive force claim were rendered effectively unavailable because the defendants had improperly failed to process the plaintiff's timely grievance, thereby thwarting the plaintiff's attempt to pursue the grievance process. 867 F.3d 1076, 1078–79 (9th Cir. 2017).

Here, the prison's grievance procedures were effectively unavailable to Plaintiff.[2] At the time that Plaintiff filed his grievance, the relevant regulations provided inmates could grieve the following:

(a)    The misapplication of any administrative directive or operational procedure;
(b)    The lack of an administrative directive or operational procedure;
(c)    Any unprofessional behavior or action which may be directed toward an inmate by an employee, contractor, or volunteer of the Department of Corrections or the Oregon Corrections Enterprises; [and]
(d)    Any oversight or error affecting an inmate.

---

[2] Under OAR 291–109–0149(1)(a), if an inmate was unable to resolve an issue through informal communications, the inmate could seek resolution of the issue by submitting a written grievance using the department's inmate grievance form. Inmates could grieve, among other things, the misapplication of any administrative directive or operational procedure and any oversight or error affecting an inmate. OAR 291–109–0140(2)(a), (d). There was ordinarily a thirty-day time limit to file a grievance. OAR 291–109–0150(2). The grievance was required to contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." OAR 291–109–0140(1)(b).

If the initial grievance did not resolve the issue, the inmate could appeal the initial grievance response to the functional unit manager. OAR  291–109–0170(1). The inmate was required to complete a grievance appeal form and file it with the grievance coordinator within fourteen days from the date that the grievance coordinator sent the grievance response to the inmate. *Id.* If still unsatisfied, the inmate could appeal the functional unit manager's decision by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of the date that the grievance coordinator sent the first grievance appeal response to the inmate. OAR 291–109–0170(2). The Assistant Director's or designee's decision on an inmate's grievance appeal was final and was not subject to further review.  OAR 291–109–0170(2)(f).

OAR 291-109-140(2)(a)–(d). Inmates could not grieve, among other things, "incident(s) to or problem(s) to which an inmate was not a party" and "group grievances representing other inmates, or acts where an inmate is a spokesperson for other inmates." *Id.* at (3)(f), (i). Further, grievances were required to include "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." *Id.* at (1)(b).

In this case, Plaintiff took reasonable steps to exhaust but was prevented from doing so because of a mistake by prison officials in processing Plaintiff's grievance. Specifically, Defendants cited an incorrect basis for denying Plaintiff's grievance. Defendants stated that Plaintiff's grievance did not "demonstrate[] how it qualifies under OAR 291-109-0140(2)" because it did not "demonstrate[] a misapplication or lack of a specific rule." Miles Decl. Att. at 1. But Plaintiff did cite the misapplication of a rule. Plaintiff stated that prison officials had failed to comply with OAR 291-013-0104(5)(a) because they were not using chemical agents in accordance with the manufacturer's instructions by training staff to decontaminate inmates with hot water. *Id.* at 2–3. While Plaintiff may have failed to *demonstrate* that a rule was misapplied or an error was made by not including any specific facts or context in his grievance, these deficiencies were not identified in Defendants' grievance response. *See* Sobotta Dep. 28:13–30:21.

Thus, viewing the evidence in the light most favorable to Plaintiff, Defendants' mistake or improper processing of Plaintiff's grievance prevented Plaintiff from pursuing the necessary sequence of appeals. Though Plaintiff could have tried to correct the cited procedural error in his grievance within 14 days of Defendants' response under OAR 290-109-0160(5), the error identified by Defendants was incorrect. Attempting to correct the identified deficiency would have been futile. As Plaintiff was not given notice of the actual deficiencies with his grievance,

he was precluded from correcting the problems underlying his grievance. *See Sapp*, 623 F.3d at 823–24 (finding that a grievance procedure may be unavailable where a prisoner's grievance is improperly screened, which requires the inmate to show "that prison officials screened his grievance . . . for reasons inconsistent with or unsupported by applicable regulations"); *Bond v. Oregon,* No. 3:16-CV-00648-YY, 2017 WL 3184186, at *7 (D. Or. July 6, 2017), *report and recommendation adopted*, No. 3:16-CV-00648-YY, 2017 WL 3184469 (D. Or. July 25, 2017) (concluding "that due to the incomplete, and therefore misleading, inactions of prison officials and the particular circumstances in [the plaintiff's] case, administrative remedies were effectively unavailable to her."). In other words, due to an error by prison officials, Plaintiff was unable to further pursue his grievance through the necessary sequence of appeals. Because Defendants' mistake foreclosed exhaustion, the grievance procedures were effectively unavailable to him.

## II.    Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims because it was not clearly established that providing a hot—rather than cold—shower for decontamination constituted deliberate indifference the Eighth Amendment. Def. Supp. Mot. 11, ECF 53. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When analyzing a qualified-immunity question, the court applies a two-step process. First, a court "must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right." *Id.* at 232. "Second . . . the court must decide whether the right at issue was

'clearly established' at the time of defendant's alleged misconduct." *Id.* (citing *Saucier v. Katz,*
*533 U.S. 194, 201 (2001)*). Courts have discretion regarding "which of the two prongs of the
qualified immunity analysis should be addressed first in light of the circumstances in the
particular case at hand." *Id.* at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official
would have understood that what he is doing violates that right.'" *Mullenix v. Luna,* 136 S. Ct.
305, 308 (2015) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)). Courts "'do not require
a case directly on point'" to defeat a claim of qualified immunity, "'but existing precedent must
have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al–*
*Kidd,* 563 U.S. 731, 741 (2011)); *see also Greisen v. Hanken,* 925 F.3d 1097, 1108–09 (9th Cir.
2019). In conducting this analysis, "[t]he dispositive question is 'whether the violative nature of
particular conduct is clearly established.'" *Mullenix,* 136 S. Ct. at 308 (quoting *al–Kidd,* 563
U.S. at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as
a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004)); *see*
*also City of Escondido, Cal. v. Emmons,* 139 S. Ct. 500, 503 (2019).

In *Garcia v. Pope,* the district court was presented with a similar Eighth Amendment
claim. Case No. 2:18-cv-01573-MC, 2020 WL 1068239, at *2 (D. Or. March 5, 2020). There,
the plaintiff alleged that the defendants were deliberately indifferent to the plaintiff's health and
safety when they exposed him to a warm-water decontamination shower. *Id.* at *1. The
defendants argued that qualified immunity defeated the plaintiff's claim, and the court agreed,
finding that "no controlling or even persuasive authority has held that warm-water
decontamination showers constitute deliberate indifference." *Id.* at *2. The court further noted
that "most courts addressing this issue have rejected claims of deliberate indifference arising

from a warm or hot decontamination shower." *Id.* (citing cases from the Southern District of New York, Southern District of Ohio, District of Maryland, Western District of Virginia, Central District of California, Eastern District of Virginia, Eastern District of North Carolina, and the Southern District of California). And "[i]n the few cases denying qualified immunity, the inmates were subjected to additional conditions that exacerbated their pain and discomfort." *Id.* at *3 (citing cases from the Southern District of West Virginia and the Eastern District of California where the plaintiff was subjected to "excessively hot water" and was denied medical assistance or moved to solitary confinement without fresh clothing or bedding). Because the plaintiff in *Garcia* "[did] not allege any disregard to his health or safety aside from the warm shower," was provided other methods of decontamination, and was not forced to take a shower, the court concluded that "it was not clearly established that [the] plaintiff's Eighth Amendment rights would be violated by exposure to a warm decontamination shower." *Id.* at *3.

Here, too, Plaintiff's claims are barred by qualified immunity. Like the plaintiff in *Garcia*, Plaintiff has not alleged any disregard to his health or safety aside from the temperature of the water, was provided with other methods of decontamination, and was not forced to take a shower.[3] And at the time of this incident it was not clearly established that Plaintiff's Eighth Amendment rights would be violated by exposure to a hot or warm decontamination shower. Because the hot-water shower claims are the sole deliberate indifference claims in this case, the Court finds that Defendants are entitled to summary judgment and this case is dismissed.

///

---

[3] In his response to Defendants' Supplemental Motion for Summary Judgment, Plaintiff also emphasizes that he was not provided with an opportunity to rinse out his eyes at an eye wash station. *See* Pl. Resp. Supp. Mot. 13, 15, ECF 61. Plaintiff's Complaint, however, does not mention this fact. Rather, Plaintiff's Complaint is solely focused on the hot temperature of the shower he was provided. *See* Compl. 1.

**CONCLUSION**

The Court DENIES Defendants' Motion for Summary Judgment [30] and GRANTS

Defendants' Supplemental Motion for Summary Judgment [53]. Because Defendants are entitled

to qualified immunity, this case is dismissed with prejudice.

IT IS SO ORDERED.


DATED:____December 23, 2020____.



MARCO A. HERNÁNDEZ
United States District Judge